**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GABRIEL SEALE,                             :
                                           :
     Plaintiff,                          :        Civil Action No.: 25-79 (RC)
                                           :
     v.                                  :        Re Document No.:    11
                                           :
DOWNTOWNDC BID,                            :
                                           :
     Defendant.                          :

<u>**MEMORANDUM OPINION**</u>

**Granting Defendant's Motion to Dismiss**

## I.  INTRODUCTION

Gabriel Seale ("Plaintiff") filed this suit *pro se* against his former employer
DowntownDC BID ("Defendant" or "DowntownDC"), alleging that Defendant engaged in
discrimination on the basis of race, color, and national origin and retaliation in violation of
Title VII of the Civil Rights Act of 1964.  Am. Compl. at 4, ECF No. 7-1.  Defendant moves to
dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for
failure to state a claim upon which relief can be granted.  *See* Defs.' Mot. Dismiss at 3–5
("MTD"), ECF No. 11.  For the reasons discussed below, the Court grants Defendant's Motion
to Dismiss.

## II.  FACTUAL BACKGROUND[1]

In December 2023, Plaintiff applied for a posted "Safety Maintenance Ambassador"
position with Defendant via email.  Am. Compl. at 7.  After not receiving a response to his

---

[1] For purposes of deciding this Rule 12(b)(6) motion, the Court accepts all facts alleged
in the Amended Complaint as true.  *See e.g.*, *Jackson v. Modly*, 949 F.3d 763, 767 (D.C. Cir.
2020) (quoting *True the Vote, Inc. v. IRS*, 831 F.3d 551, 555 (D.C. Cir. 2016)).

application for a period of weeks, Plaintiff visited Defendant's headquarters to inquire about his application's status. *Id.* Plaintiff alleges that the receptionist, after listening to the inquiry, "shout[ed]" at him and told him that the posting should have been removed because the job was unavailable. *Id.* When Plaintiff asked for the hiring manager's contact information, the receptionist asserted that "[e]ven though there's a lot of blacks working here the hiring manager is [S]panish so don't think you['re] getting hired." *Id.*

In January 2024, Plaintiff approached a group of DowntownDC's staff on a street corner, including Lukas Umana, an Operations Director of DowntownDC. *Id.* Plaintiff told Mr. Umana of the receptionist's statement. *Id.* at 7–8. Mr. Umana asked Plaintiff to send him a resume to his direct email, and in March 2024, Plaintiff was invited to interview for the Safety Maintenance Ambassador position at the organization. *Id.* at 8. Around April 2, 2024, Plaintiff was hired by Defendant and began work on April 8, 2024. *Id.*

After completing training with other employees, Plaintiff alleges that the other newly trained employees were given tasks at the start of each day while he was asked to sit in the break room and wait for an assignment. *Id.* While sitting in the breakroom, Plaintiff alleges that he overheard three employees discussing that he "forged [his] way into the company" because he complained of the receptionist's actions to Mr. Umana. *Id.*

Plaintiff alleges that he was never issued a radio phone. *Id.* at 9–10, 12. Without a radio phone, Defendant could not monitor Plaintiff's location and Plaintiff was prevented from requesting more supplies and contacting his supervisors. *Id.* at 10. Plaintiff's manager told him that he "should have had [a radio phone] weeks before" and did not know why Plaintiff did not yet have one. *Id.*

On May 3, 2024, Plaintiff had an altercation with a female coworker.  *Id.* at 10–11.
Plaintiff, his female coworker, and one other employee were directed to go to work in "zone 8",
but Plaintiff believed that his female coworker led them to "zone 7" instead.  *Id.* at 10.  Plaintiff
asserted that the coworker went against supervisor instructions and ignored his insistence that the
group was in the wrong location, so Plaintiff contacted the supervisor on his phone to report the
female coworker.  *Id.* at 10–11.  Plaintiff tapped the coworker on the shoulder to inform her that
the group was not in the correct location, and she began "cursing [at Plaintiff] in public" for
touching and reporting her.  *Id.*  Hearing of the confrontation, Plaintiff's supervisors contacted
the group minutes later and directed them to return to headquarters.  *Id.* at 11.  There, Plaintiff's
supervisors asked him to file an incident report and told him that he would receive a warning for
the unapproved contact he made with the female coworker, but that he was expected to "return to
work the next morning in uniform."  *Id.*  On May 7, 2024, Plaintiff was brought into
headquarters and fired.  *Id.* at 12.

Plaintiff filed discrimination and retaliation claims with the Equal Employment
Opportunity Commission, which declined to investigate in November 2024 and informed
Plaintiff of his right to sue.  *Id.* at 13; Ex. to Am. Compl. at 1, ECF No. 7-2.  In January 2025,
Plaintiff filed this action against Defendant.[2]  Am. Compl. at 1.  Plaintiff alleges that he was
discriminated against on the basis of race, color, and national origin.  *Id.* at 4.  He further alleges
retaliation.  *Id.*  Defendant filed a motion to dismiss, claiming that the Amended Complaint fails

---

[2] In the original complaint, Plaintiff also named as defendants two employees of
DowntownDC: Human Resources Manager Christian Romero and Director of Operations Lukas
Umana.  *See* Compl. at 2.  Defendant filed a motion to dismiss these charges on April 2, 2025,
arguing that supervisors cannot be held individually liable under Title VII suits.  MTD at 5–6.
Plaintiff voluntarily dismissed his claims against both individuals, leaving only the claims
against Defendant to be addressed here.  *See* Notice of Voluntary Dismissal, ECF No. 13.

to state a claim on which relief can be granted. *See* MTD at 3–5; Fed. R. Civ. P. 12(b)(6). Plaintiff maintains that the facts described in the Amended Complaint provide sufficient evidence that the receptionist's statements were discriminatory and that no nexus is required under Title VII between the adverse employment action and the discrimination. Pl.'s Opp'n Mot. Dismiss ("Pl.'s Opp'n") at 11, ECF No. 14. Plaintiff also argues that the facts presented in the Amended Complaint are sufficient to make his retaliation claim plausible. *Id.* at 3–6.

### III. LEGAL STANDARD

A motion to dismiss does not test a plaintiff's likelihood of success on the merits, but rather "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the Court takes all alleged facts to be true when deciding a motion to dismiss, statements that "are conclusory [are] not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

When considering a motion to dismiss, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). While a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) *pro se* plaintiffs must still meet the requirements of

4

the Federal Rules of Civil Procedure, *see Bank of N.Y. Mellon Tr. Co. v. Henderson*, 862

F.3d 29, 33 (D.C. Cir. 2017).

## IV.  ANALYSIS

The Court first considers Plaintiff's discrimination claim and then his retaliation claim.

As discussed below, the Court concludes that Plaintiff has failed to state a claim, and grants

Defendant's Motion to Dismiss.

### A.  Discrimination Claim

Defendant argues that Plaintiff has failed to "provide any information showing how an

adverse employment action gives rise to an inference of discrimination."  Def.'s Reply Pl.'s

Opp'n Mot. Dismiss at 1, ECF No. 16.  While Defendant concedes that Plaintiff, an African

American, has sufficiently alleged that he is a member of a protected class, and that his

termination was an adverse employment action, Defendant asserts that the statement of the

receptionist is insufficient to support an inference of discrimination for Plaintiff's termination

because the statement "occurred months prior to [Plaintiff] being hired at DowntownDC."  *Id.* at

1–2.  And Defendant maintains that Plaintiff's "list of perceived slights and grievances . . . make

no reference whatsoever" to "race, color, or national origin," so they too fail to support his claim.

MTD at 4.

To successfully plead a claim of discrimination under Title VII, a plaintiff must

demonstrate that "(1) []he is a member of a protected class; (2) []he suffered an adverse

employment action; and (3) the unfavorable action gives rise to an inference of discrimination."

*Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (citation omitted).  "[P]laintiff must

allege some facts that demonstrate that his race was the reason for [a] defendant's actions."

*Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 274 (D.D.C. 2011) (quoting *Middlebrooks v.*

*Godwin Corp.*, 722 F. Supp. 2d 82, 88 (D.D.C. 2010)) (second alteration in original).  An

inference of discriminatory motivation for "Title VII claims may be proven by direct or

circumstantial evidence."  *Abdelhamid v. Lane Constr. Corp.*, 744 F. Supp. 3d 10, 19 (D.D.C.

2024) (quoting *Oviedo v. Wash. Metro. Area Transit Auth.*, 299 F. Supp. 3d 50, 59 (D.D.C.

2018), *aff'd* 948 F.3d 386 (D.C. Cir. 2020)).  "While courts have not precisely defined what

constitutes direct evidence, it is clear that at a minimum, direct evidence does not include stray

remarks in the workplace, particularly those made by nondecision-makers or statements made by

decisionmakers unrelated to the decisional process itself."  *Sun v. D.C. Gov't*, 133 F. Supp. 3d

155, 164 (D.D.C. 2015), *aff'd*, 686 F. App'x 5 (D.C. Cir. 2017) (quoting *Hajjar–Nejad v. George

Wash. Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014)).  In the absence of direct evidence, plaintiffs

can demonstrate discriminatory motivation through circumstantial evidence, such as by alleging

that they were "treated differently from similarly situated employees who are not part of the

protected class."  *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005).

    The Court agrees with Defendant that Plaintiff failed to allege sufficient facts to make his

discrimination claim plausible.  The only mention of race, color, or national origin in the

Amended Complaint was made by the receptionist when she told Plaintiff that "the hiring

manager is [S]panish so don't think you['re] getting hired."  Am. Compl. at 7.  Plaintiff does not

describe any further interaction with Defendant where race, color, or national origin are

addressed, nor does Plaintiff provide additional facts which might support that his race was

related to his termination.  *See id.* at 12; *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d

75, 102 (D.D.C. 2021) ("[P]laintiff must 'allege some facts that demonstrate [his] race was the

reason for defendant's actions' and cannot merely 'invoke his race in the course of a claim's

narrative.'" (second alteration in original) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5

(D.D.C. 1990))); *Tovihlon v. Allied Aviation, Inc.*, 323 F. Supp. 3d 6, 16–17 (D.D.C. 2018) (finding that one usage of a slur by a supervisor long before the plaintiff's termination "was too remote to give rise to an inference of discrimination"). There are no facts alleged that demonstrate the receptionist was a decision maker or otherwise influenced Plaintiff's termination. *See* Am. Compl. at 7, 12. Because of this, it is only "speculative" that the receptionist's statements illustrate discriminatory motivation for Plaintiff's termination. *See Twombly,* 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level") (citations omitted). Even if it was possible that the receptionist influenced Plaintiff's work experience, her statement was "unrelated to the decisional process" of Plaintiff's termination. *See Sun*, 133 F. Supp. 3d at 164 (quoting *Hajjar–Nejad*, 37 F. Supp. 3d at 125). This discriminatory comment was made four months before Plaintiff's termination. *See* Am. Compl. at 7–8, 12–13. Altogether, it is not plausible that the discriminatory views of a receptionist with no further interaction with Plaintiff affected Plaintiff's employment outcomes months later. As a result, Plaintiff has not pleaded facts that would directly support that Defendant had a discriminatory motive.

Plaintiff's Amended Complaint also does not support an inference of discrimination on the basis of comparison to other employees. Plaintiff does not describe the race, color, or national origin of his co-workers in his Amended Complaint. *See id.* at 8. Plaintiff, however, includes facts suggesting that the majority of the individuals working for Defendant, like Plaintiff, are African American. *Id.* at 7. The D.C. Circuit recently held that, to overcome a motion to dismiss for Title VII racial discrimination claims, comparators should be described in more than a superficial manner. *See Joyner v. Morrison & Foerster LLP*, No. 23-7142, 2025 WL 1717402, at *4 (D.C. Cir. June 20, 2025). Work experience, qualifications, supervisors,

availability of work, and similarity of work to a plaintiff are factors that can justify comparison and support an inference of discrimination. *See id.* at *5–6. Plaintiff has not detailed any of these traits for his differently treated coworkers, let alone the key fact necessary to make his claim plausible: that his comparator coworkers were a different race. *See* Am. Compl. at 7. As such, Plaintiff provides no apt comparator by which discriminatory motive can be inferred.

More importantly, Plaintiff's claim is not plausible because he was hired *after* the receptionist's discriminatory statement was made. *Id.* at 7–8. Because Plaintiff still received the position, the racially discriminatory perspective of the receptionist had no impact on Plaintiff's ability to obtain employment from Defendant once he connected with Mr. Umana. *See id.* There is no factual allegation supporting that the receptionist's discriminatory statement interfered with Plaintiff's employment after he was granted an interview with the company. *See id.* at 8–13. Moreover, Plaintiff does not allege that the receptionist, who allegedly harbored the discriminatory animus, played any role in his termination. *See id.* at 11–12. It is implausible that Plaintiff's termination by his managers was the result of the discriminatory perspective of a receptionist months before Plaintiff was hired by Defendant. Indeed, Plaintiff does not even allege that his termination was motivated by his race, color, or national origin in his opposition brief. *See* Pl.'s Opp'n at 2–4. The Court does not find that the allegations of discrimination rise beyond "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *See Iqbal*, 556 U.S. at 663. As a result of these insufficiencies, Defendant's Motion to Dismiss is granted as to Plaintiff's discrimination claim.

### B. Retaliation Claim

Defendant further maintains that Plaintiff's retaliation claim must be dismissed because Plaintiff fails to allege (1) that he participated in protected activity under Title VII and (2) a

causal link existed between his termination and reporting the receptionist's statement to Mr. Umana. *See* MTD at 4–5. Plaintiff counters that "reporting the receptionist's discriminatory statement" was protected activity and that dissatisfaction with this action contextualized his employment going forward. *See* Pl.'s Opp'n at 4; Am. Compl. at 9. While the Court believes that Plaintiff's report of the receptionist's statement to Mr. Umana might constitute protected activity under Title VII, the Court agrees that Plaintiff failed to present sufficient facts to make it plausible that retaliation for this activity was a cause of Plaintiff's termination.

To state a retaliation claim, "plaintiffs must show (1) that an employee engaged in statutorily protected activity; (2) that the employee suffered a materially adverse action by the employee's employer; and (3) that a causal link connects the two." *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v. Bullington*, 737 F.3d 767, 772 (D.C. Cir. 2013). Protected activity encompasses both official and unofficial actions "oppos[ing] any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Filing a complaint with an administrative agency or in court constitutes protected activity for the purposes of Title VII. *See Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006). However, "utilizing informal grievance procedures such as complaining to management or human resources about the discriminatory conduct" can also be protected activity. *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 200 (D.D.C. 2012) (citing *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007)). When an informal complaint "in some way allege[s] unlawful discrimination, not just frustrated ambition[,]" it can be protected activity under Title VII. *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006).

Here, Plaintiff's statements to Mr. Umana about the receptionist's discriminatory remarks and representations during the hiring process are plausibly protected activity under Title VII.

*See Fennell v. AARP*, 770 F. Supp. 2d 118, 127 (D.D.C. 2011) ("The pleading burden is not great, and courts in this Circuit have consistently recognized the 'ease with which a plaintiff claiming employment discrimination can survive a . . . motion to dismiss.'") (quoting *Rouse v. Berry*, 680 F. Supp. 2d 233, 236 (D.D.C. 2010)).  However, whether Plaintiff's actions were protected activity is not outcome determinative for this motion.  Plaintiff's Amended Complaint does not plausibly establish that any adverse employment action was causally related to reporting the receptionist's behavior.  Plaintiff alleges, based in part on overhearing conversations between employees, that he was being granted fewer opportunities and less favorable terms, such as deprivation of a radio locator phone, because he reported the receptionist.  *See* Am. Compl. at 8–11.  He further speculates that making the report was the cause of him not immediately receiving assignments at the start of every workday.  *See id.* at 8–9.  But Plaintiff does not connect these purported "retaliations" to his report of the receptionist's comments with any non-speculative factual allegations.  *See id.* 7–13.  Nor does he connect his complaint about the receptionist to his termination.  *See id.* at 12.

Most importantly, Plaintiff's employment timeline prevents his claims from being plausible.  There was a period of three months between Plaintiff reporting the incident with the receptionist and his invitation to interview, and there were four months between Plaintiff's report of the receptionist and his termination.  *Id.* at 7–8, 12.  This extended period makes it implausible that reporting the receptionist was the cause of his alleged mistreatment or termination.  *See Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) ("When relying on temporal proximity . . . three months is perceived as approaching the outer limit."); *Keys v. Donovan*, 37 F. Supp. 3d 368, 372 (D.D.C. 2014) (recognizing that courts relying on temporal proximity to establish causality "uniformly hold that the temporal proximity must be '*very*

---

*close*'") (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  Because Plaintiff was hired *after* he reported the receptionist, the activity appeared to have no effect on his employment possibilities, breaking the causal chain.

Further, Defendant alleges no facts in the Amended Complaint that make it plausible that Defendant hired Plaintiff for the purpose of retaliating against him for reporting the discriminatory statement.  *See Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("'[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire,' especially 'when the firing has occurred only a short time after the hiring.'" (second alteration in original) (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002))); *Moreno-Livini v. AFL-CIO Hous. Inv. Tr.,* No. 24-cv-1392, 2024 WL 4144112, at *4 (D.D.C. Sept. 11, 2024) (dismissing racial discrimination claim as implausible where plaintiff alleged the same people who hired her discriminated against her as soon as she arrived).  Plaintiff fails to create a plausible causal link between the report he made in January 2024 and his work conditions and termination months later.  *See* Am. Compl. at 7–13.  Even accepting Plaintiff's allegations as true, Plaintiff's retaliation claim does not plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Motion to Dismiss is thus granted as to Plaintiff's retaliation claim.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED** without prejudice.  The Court will grant Plaintiff leave to file an Amended Complaint on or before August 6, 2025, that cures the deficiencies identified by the Court in this Memorandum Opinion. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 7, 2025                                        RUDOLPH CONTRERAS
                                                            United States District Judge