**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| GABRIEL SEALE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-79 (RC) |
| | : | | |
| v. | : | Re Document No.: | 21 |
| | : | | |
| DOWNTOWNDC BID, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

**DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

## I.  INTRODUCTION

In this employment discrimination action, Plaintiff, Gabriel Seale, has filed a motion

pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Court's

Memorandum Opinion dismissing the case for failure to state a claim upon which relief may be

granted.  Pl.'s Mot. Recons. ("MFR") at 1, ECF No. 21; *see* Mem. Op. Granting Def.'s Mot.

Dismiss at 1, ECF No. 20.  For the following reasons, Rule 59(e) relief is unwarranted, and the

Court will deny Plaintiff's Motion for Reconsideration.

## II.  FACTUAL BACKGROUND

The Court presumes familiarity with the factual and procedural history of this case, which

is described in the Court's recent opinion.  *See Seale v. DowntownDC BID*, No. 25-cv-79, 2025

WL 1865028, at *1–2 (D.D.C. July 7, 2025).  What follows is an overview of facts relevant to

Plaintiff's pending motion.

In December 2023, Plaintiff applied for a posted Safety Maintenance Ambassador

position with Defendant, DowntownDC BID ("DowntownDC"), via email.  Am. Compl. at 7,

ECF No. 7-1.  DowntownDC's Safety Maintenance Ambassadors attend to cleaning and other

services of public areas.  *See id.* at 11–12.  After not receiving a response to his application for a period of weeks, Plaintiff visited Defendant's headquarters to inquire about his application's status.  *Id.* at 7.  Plaintiff alleged that the receptionist, after listening to the inquiry, "shout[ed]" at him and told him that the posting should have been removed because the job was unavailable. *Id.*  When Plaintiff asked for the hiring manager's contact information, the receptionist asserted that "[e]ven though there's a lot of blacks working here the hiring manager is [S]panish so don't think you['re] getting hired." *Id.*

In January 2024, Plaintiff approached a group of DowntownDC's staff on a street corner, including Lukas Umana, an Operations Director of DowntownDC. *Id.*  Plaintiff expressed interest in the Safety Maintenance Ambassador position to Mr. Umana and told him of the receptionist's statement. *Id.* at 7–8.  Mr. Umana asked Plaintiff to send him a resume to his direct email, and in March 2024, Plaintiff was invited for an interview, which Plaintiff alleged was labeled "second interview," for this position at the organization. *Id.* at 8.  Around April 2, 2024, Plaintiff was hired by Defendant and began work on April 8, 2024. *Id.*

Plaintiff alleged that he was never issued a radio phone. *Id.* at 9–10, 12.  Without a radio phone, Defendant could not monitor Plaintiff's location, and Plaintiff was unable to request more supplies and contact his supervisors. *Id.* at 10.  Plaintiff's manager told him that he "should have had [a radio phone] weeks before" and did not know why Plaintiff did not yet have one. *Id.*

On May 3, 2024, Plaintiff had an altercation with a female coworker. *Id.*  After Plaintiff tapped the coworker on the shoulder to inform her that their group was not in the correct location, she began "cursing [at Plaintiff] in public" for touching and reporting her to the supervisor. *Id.* at 10–11.  Hearing of the confrontation, Plaintiff's supervisors contacted the group minutes later and directed them to return to headquarters. *Id.* at 11.  There, Plaintiff's

2

supervisors asked him to file an incident report and told him that he would receive a warning for the unapproved contact he made with the female coworker, but that he was expected to "return to work the next morning in uniform." *Id.*  On May 7, 2024, Plaintiff was brought into headquarters and fired. *Id.* at 12.

Plaintiff brought suit against DowntownDC, alleging employment discrimination and retaliation on the basis of race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. *Id.* at 1, 4.  On April 2, 2025, Defendant filed a motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  *See* Defs.' Mot. Dismiss at 3–5 ("MTD"), ECF No. 11.  On June 17, 2025, Plaintiff moved to compel a Rule 26(f) conference with Defendant.  *See* Pl.'s Mot. Compel at 1, ECF No. 17.  This Court denied the Motion to Compel without prejudice upon granting Defendant's Motion to Dismiss. Min. Order, July 7, 2025.

Granting Defendant's Motion to Dismiss, the Court held that Plaintiff had failed to allege facts that plausibly demonstrated that his race, color, or national origin were reasons for Defendant's adverse actions, a necessary step at the pleading stage of a Title VII discrimination claim.  *See Seale*, 2025 WL 1865028, at *3-5.  The Court also held that Plaintiff had failed to allege facts plausibly demonstrating a causal connection between his termination and having reported the receptionist's statement to Mr. Umana, which foreclosed his Title VII retaliation claim.  *See id.* at *4.

### III.  LEGAL STANDARD

Rule 59(e) permits a party to file a motion to "alter or amend" a judgment no later than twenty-eight days after the entry of the judgment.  Fed. R. Civ. P. 59(e).  To prevail, the moving

party must identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Messina v. Krakower*, 439 F.3d 755, 758 (D.C. Cir. 2006) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  Rule 59(e) motions are "disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Off. of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).[1]

Clear error is a "very exacting standard," requiring a final judgment to have been "dead wrong." *Bond v. U.S. Dep't of Just.*, 286 F.R.D. 16, 22 (D.D.C. 2012) (first quoting *Hopwood v. Texas*, 236 F.3d 256, 272 (5th Cir. 2000); and then quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).  Likewise, "manifest injustice" in the context of a Rule 59(e) motion is an "exceptionally narrow concept": it "must entail more than just a clear and certain prejudice to the moving party, but also a result that is fundamentally unfair in light of governing law." *Wannall v. Honeywell Int'l, Inc.*, No. 10-351, 2013 WL 12321549, at *3 (D.D.C. Oct. 24, 2013).

Furthermore, Rule 59(e) "may not be used to relitigate old matters." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (quoting Wright & Miller, Federal Practice & Procedure § 2810.1 (2d ed. 1995)).  "Absent a demonstrated intervening change of controlling law or new evidence, the law is well-settled that litigants may not use Rule 59(e) either to repeat unsuccessful arguments or to assert new but previously available arguments." *Slate v. Am. Broad. Cos.*, 12 F. Supp. 3d 30, 34 (D.D.C. 2013).  This strictness is "justified by the need to

---

[1] The Court's July 7, 2025 judgment granted Plaintiff leave to "file an Amended Complaint on or before August 6, 2025, that cures the deficiencies identified by the Court in [its] Memorandum Opinion."  Mem. Op. Granting Def.'s Mot. Dismiss at 12.  Plaintiff chose instead to file a Rule 59(e) Motion to Alter or Amend Judgment, raising the bar to meet Rule 59's "more stringent standard." *See Firestone*, 76 F.3d at 1208.

protect both the integrity of the adversarial process in which parties are expected to bring all

arguments before the court, and the ability of parties and others to rely on the finality of

judgments." *U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos.*, 403 F. Supp. 2d

34, 36 (D.D.C. 2005).

## IV.  ANALYSIS

Plaintiff does not submit that the Court's judgment should be reconsidered on the

grounds of an intervening change of controlling law or the availability of new evidence.  Instead,

Plaintiff asserts that the judgment presented manifest injustice and "clear errors of law or fact"

by "overlook[ing] or misconstru[ing] several critical points."  MFR at 1–2.  The Court concludes

that its prior grant of dismissal does not present clear error or manifest injustice.

Plaintiff contends, among other things, that the Court's judgment focused on race as the

sole basis for Title VII discrimination and "appear[ed] to disregard the equally protected

categories of color and national origin."  MFR at 3.  This is not the case.  As the Court stated in

its judgment, the only mention of race, color, or national origin in the Amended Complaint was a

comment made by the receptionist when she told Plaintiff that "[e]ven though there's a lot of

blacks working here the hiring manager is [S]panish so don't think you['re] getting hired."

*Seale*, 2025 WL 1865028, at *1, *3 (quoting Am. Compl. at 7).  Plaintiff alleged no facts

connecting the receptionist's comments to his termination four months later.  *Id.* at *5.  And he

alleged no other facts otherwise connecting his race, color, or national origin to his termination.

Thus, dismissal of his discrimination claim was warranted.  *See Forkkio v. Powell*, 306 F.3d

1127, 1130 (D.C. Cir. 2002) (stating that to successfully plead a Title VII discrimination claim, a

plaintiff must demonstrate that "(1) he is a member of a protected class, (2) he suffered an

adverse employment action, and (3) the unfavorable action gives rise to an inference of

discrimination"); *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021)

("[P]laintiff must 'allege some facts that demonstrate [his] race was the reason for defendant's

actions' and cannot merely 'invoke his race in the course of a claim's narrative.'" (second

alteration in original) (quoting *Bray v. RHT, Inc.*, 748 F. Supp. 3, 5 (D.D.C. 1990))).

Plaintiff further contends that the Court "did not fully account for the evidence presented

regarding Mr. Umana's actions after [Plaintiff] reported the receptionist's discriminatory

statement." MFR at 2. But after Plaintiff reported the statement, Mr. Umana asked Plaintiff to

send him a resume to his direct email, and Plaintiff was ultimately hired. Am. Compl. at 7–8.

Plaintiff does not explain how this qualifies as an *adverse* action. *Forkkio*, 306 F.3d at 1130

(stating that Title VII discrimination claims require an "adverse" employment action).

Furthermore, Plaintiff's allegation that his invitation to interview was labeled "second interview"

has no bearing on race or any other protected characteristic. *See* MFR at 2. Likewise, Plaintiff

pleads no facts connecting his allegation that his supervisors purposely delayed his radio locator

phone to his race, color, or national origin. Such facts do not change the court's conclusion that

Plaintiff failed to state a discrimination claim.[2]

Plaintiff's contentions regarding his retaliation claim are also without merit. Plaintiff

provides no support for his assertion that he sufficiently alleged a causal link between events in

his complaint. MFR at 3. As the Court stated, "Plaintiff fail[ed] to allege . . . [that] a causal link

---

[2] Plaintiff also states that the Court did not consider "that [his] last name Seale was too close to Seal of the President" and that this influenced his supervisors in not "want[ing] [him] to have a company radio locator phone while at work." MFR at 2. This fact was neither pled in Plaintiff's Amended Complaint nor "newly available," therefore the Court will not consider it. *See Martin v. Omni Hotels Mgmt. Corp.*, 321 F.R.D. 35, 38–39 (D.D.C. 2017) (declining to consider a newly-pled fact in a Rule 59(e) motion because the "evidence was previously available"). Regardless, Plaintiff does not connect his name to a protected characteristic.

existed between his termination and reporting the receptionist's statement to Mr. Umana," particularly because he was hired after reporting the statement. *Seale*, 2025 WL 1865028, at \*5.

Finally, Plaintiff contends that the Court committed procedural error by dismissing his case without penalizing Defendant for "refusing the mandatory 26(f) conference" that he requested. MFR at 3. This argument fails. Defendant filed its Motion to Dismiss on April 2, 2025. *Seale*, 2025 WL 1865028, at \*2. In Plaintiff's subsequently filed Motion to Compel a Rule 26(f) conference, he stated no legitimate basis for the Court to compel such a conference while Defendant's Motion to Dismiss was pending. *See generally* Pl.'s Mot. Compel. Had Defendant's Motion to Dismiss been denied, Plaintiff would have been entitled to a conference "at least 21 days before a scheduling conference [was] to be held or a scheduling order [was] due under Rule 16(b)" in accordance with Rule 26(f). Fed. R. Civ. P. 26(f).

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reconsideration of Judgment (ECF No. 21) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 12, 2025                                   RUDOLPH CONTRERAS
                                                          United States District Judge